UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| TIMOTHY DAY, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 2:24-cv-00038 |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court in this insurance dispute are Timothy Blake Day's Motion for Partial Summary Judgment (Doc. No. 25) on the issue of coverage, and State Farm Fire and Casualty Company's ("State Farm") Motion for Summary Judgment (Doc. No. 28) on the issues of coverage and Day's claim under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101, et. seq. The motions are ripe for decision. (See Doc. Nos. 27, 29, 33, 35, 37). For the following reasons, Day's motion will be denied, and State Farm's motion will be granted in part and denied in part.

I. **BACKGROUND AND UNDISPUTED FACTS**[1]

Day owns a house located at 4336 Star Point Road in Byrdstown, Tennessee ("Home"). (Doc. No. 34 ¶ 1). He purchased a Tennessee Homeowners Policy ("Policy") from State Farm that covered his Home at all times relevant to this case. (Doc. No. 25-14; see also Doc. Nos. 34 ¶ 8;

---

[1] The Court draws these facts from the undisputed portions of the parties' statements of facts (Doc. Nos. 34, 36), the exhibits submitted in connection with the summary judgment briefing, and portions of the Complaint (Doc. No. 1) that are not contradicted by the evidence in the record. Resolution of this factual dispute could be important to the jury.

36 ¶ 2). Day spent some time away from his Home for Memorial Day weekend in 2023.[2] When he returned on or around June 2, 2023, he noticed "water damage to the floors, walls, and furniture of his" Home, "moisture throughout the house," "floor damage," and "mold or mildew throughout a large portion of" his Home. (Doc. No. 34 ¶ 3). He testified that "there was water dripping everywhere" and described it as one of "those little aquarium things" you make "when you're in school where . . . all of the condensation builds[.]" (Doc. Nos. 36 ¶ 4; 25-1 at 32). Day immediately "ran out to the front yard and turned the water off to the house and then went back inside" to determine "exactly what had happened." (Doc. Nos. 36 ¶ 6; 25-1 at 32–33).

Day is a licensed adjuster and "assumed there was a broken pipe or something going on in the house." (Id. at 32–34). He hired a contractor named Billy Williams from Midwest Storm Exteriors to help him find the source of the water. (Id.). Williams concluded that the "mixer valve" abruptly and accidentally failed, which caused hot water to pump out of the shower in the master bathroom.[3] (Id. at 33–34; Doc. No. 25-2 at 81–82). Day testified that hot water must have "overfilled the shower area" and caused humidity to build up inside his Home. (Doc. No. 25 at 34).

After he discovered the damage, Day submitted an insurance claim to State Farm under the Policy. The Policy provides that State Farm "will pay for accidental direct physical loss to" Day's Home unless the loss is "excluded or limited" by another section of the Policy. On June 8, 2023, State Farm's claims specialist Chip Jones inspected the interior of the Home. (Doc. Nos. 36 ¶ 7;

---

[2] The parties dispute how long Day was away from his Home, with Day claiming it was "the entire weekend and a day or two on each side of the weekend," and State Farm claiming it was "at least for a couple days and potentially a couple of weeks." (Doc. Nos. 34 ¶ 2; 36 ¶ 3; 25-16 at 16).

[3] "The mixer valve is a pressurized valve in the plumbing system that is used to mix hot water with cold water for the purpose of regulated temperature during a shower." (Doc. No. 34 ¶ 7).

2

25-16 at 18–20). During his inspection, Jones noticed "mold all over the walls." (Doc. No. 25-16 at 25–28, 46). On June 9, 2023, Jones sent Day a letter denying all Policy coverage because "the mold and mildew damage to the dwelling and personal property is not covered under" the Policy. (Doc. No. 25-3 at 14). Jones also cited the following Policy exclusion for "fungus," which includes "mold" and "mildew:"

> 1. [State Farm] will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. [State Farm] will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the *residence premises*, arises from any natural or external forces, or occurs as a result of any combination of these.
>
> . . .
>
> g. ***Fungus***, including
>
>> (1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the *residence premises* or location of the rebuilding, repair, or replacement, by *fungus*;
>>
>> (2) any remediation of fungus, including the cost to:
>>
>>> (a) remove the fungus from covered property or to repair, restore, or replace that property; or
>>>
>>> (b) tear out and replace any part of the ***building structure*** or other property as needed to gain access to the *fungus*; or
>>
>> (3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence, or level of *fungus*, whether performed prior to, during, or after removal, repair, restoration, or replacement of covered property.

(Id. at 15–16; Doc. No. 25-14 at 11, 25–27).

On June 14, 2023, Jones inspected the crawl space to investigate potential water damage. (Doc. No. 25-16 at 22). He determined that the water damage "was isolated" to a small area of the

house, meaning the damage must have been caused by "a water line or a valve that just leaked" continuously. (Id. at 46–47; Doc. No. 25-17 at 2). On July 13, 2023, Jones sent Day a second Policy denial letter stating that "there was no evidence of sudden water damage to the dwelling," but that "there is evidence of a long term leak in the plumbing system and or appliance that has resulted in deterioration to the flooring and sub flooring in [the] master bathroom, hall bathroom, utility closet and a very small area of the master bedroom floor just outside the master bathroom doorway."[4] (Doc. No. 25-3 at 2; see also Doc. No. 36 ¶ 8). According to Jones, this meant that the following Policy exclusion also applied to deny coverage:

1. [State Farm] will not pay for any loss to [Day's Home] that consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs abruptly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   . . .

   f.  seepage or leakage of water, steam, or sewage that occurs or develops over a period of time:

   (1) and is:

   (a) continuous;

   (b) repeating;

   (c) gradual;

   (d) intermittent;

   (e) slow; or

   (f) trickling; and

   (2) from a:

---

[4] Jones offered to meet with Day "for an additional inspection," but that inspection did not occur. (Doc. No. 25-3 at 2; see also Doc. No. 36 ¶¶ 9–10).

> (a) heating, air conditioning, or automatic fire protective sprinkler system;
>
> (b) household appliance; or
>
> (c) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors.
>
> [State Farm] also will not pay for losses arising from condensation or the presence of humidity, moisture, or vapor that occurs or develops over a period of time.

(Id. at 24–25). It is undisputed that Jones never inspected the mixer valve or identified how long the alleged leak had been occurring. (Doc. No. 34 ¶ 13). It is also undisputed that Jones testified he did not "have any evidence to contradict" Day's belief that the damage was caused by the sudden and accidental failure of the mixer valve. (Id. ¶ 15).

State Farm's putative civil engineering expert, Chris Almond, also conducted an inspection of the Home on September 5, 2025. (Doc. No. 28-3 at 3). Almond opined that the "water damage and biological growth on the applied interior wall and floor finishes were consistent with the plumbing failure," which "was consistent with a sudden and accidental pipe burst." (Id. at 5–6). He further opined that "long-term wood decay" caused damage to the floor framing, subfloor, and logs, and that inadequate ventilation caused the "biological growth in the crawlspace." (Id.).

On May 31, 2024, Day brought this diversity action against State Farm for breach of contract and violations of the TCPA. (Doc. No. 1 ¶¶ 20–21). He alleges that State Farm "breached its contractual obligations pursuant to the policy to pay [him] for the losses he sustained as a result of the" failed mixer valve. (Id. ¶ 20). Day seeks $157,668.43 for the cost to repair his home, as well as treble damages for State Farm's alleged willful violation of the TCPA. (Id. ¶ 23). State Farm denies all liability.

## II. LEGAL STANDARD

Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Peffer v. Stephens, 880 F.3d 256, 262 (6th Cir. 2018) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003) (citation omitted). "The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the non-moving party's case." Id. (citation and internal quotation marks omitted). "In response, the nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'" Miller v. Maddox, 866 F.3d 386, 389 (6th Cir. 2017) (quoting Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993)).

"[W]here, as here, the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016) (quoting Taft Broad. Co. v. United States, 929 F.2d 240, 248 (6th Cir. 1991)); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson, 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment;

rather, there must be evidence on which a trier of fact could reasonably find for the non-moving party. Rodgers, 344 F.3d at 595.

## III. ANALYSIS

### A. Breach of Contract Claim

Tennessee law applies to Day's breach of contract claim because the Policy is a "Tennessee" policy, (Doc. No. 25-14 at 7), and both parties assume that Tennessee substantive law governs here. (See Doc. Nos. 27 at 7–8; 29 at 8); see also Langston v. State Farm Fire & Cas. Co., 2022 WL 2124451, at *1 (W.D. Tenn. June 13, 2022) (citing GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998) (holding that "[w]hen there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte"). In Tennessee, a breach of contract claim involves three elements: (1) "the existence of a valid and enforceable contract," (2) "a deficiency in the performance amounting to a breach," and (3) "damages caused by the breach." Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 291 (Tenn. 2011).

There is no dispute that the Policy is a valid and enforceable contract between Day and State Farm. Instead, the parties dispute whether State Farm breached the Policy when it denied all coverage based on the exclusions for (i) continuous seepage and leakage of water, and (ii) mold and mildew. "It is elementary in insurance law that a claimant under an insurance policy [i.e. Day] has the initial burden of proving that he comes within the terms of the policy," and "the insurer [i.e. State Farm] carries the burden if it claims that one of the policy exclusions applies to the claimant and prevents recovery." Blaine Const. Corp. v. Ins. Co. of N. Am., 171 F.3d 343, 349 (6th Cir. 1999) (citation omitted).

The Court finds that summary judgment is not appropriate here because there is a genuine dispute of material fact regarding what *caused* the damage to Day's Home. Day asserts that the mixer valve's sudden and accidental failure caused the damage, which, he claims, is a covered

"accidental direct physical loss to" his property.  State Farm counters that the Policy excludes Day's damages because they resulted from long-term "seepage and leakage from something," fungus, or humidity that occurred or developed "over a period of time."  (See Doc. No. 29 at 13–17).  This factual dispute is genuine because both parties presented admissible evidence (in the form of deposition testimony and exhibits) supporting their prospective positions.  This dispute is also material because it directly determines whether State Farm breached the Policy by denying coverage.  Viewing the evidence and permissible inferences "against the party whose motion is under consideration," the Court does not find that either party is entitled to judgment as a matter of law on the issue of coverage.  McKay, 823 F.3d at 866.  It will be up to the jury to resolve this factual dispute and determine the *cause* of the damage based on the evidence presented at trial.

The Policy's fungus exclusion presents a separate question regarding Day's potential damages.  Although the Policy uses a triple negative, the plain language is unambiguous that State Farm will not cover "any loss that would not have occurred in the absence of" (i.e. *but for*) an "excluded event."  (See Doc. No. 25-14 at 25–27).  Day argues that it makes no sense to describe "fungus" as an excluded event, and that the Policy only excludes "an event associated with fungus" that produces a loss or damage.  (Doc. No. 35 at 6–8).  The Court disagrees and holds as a matter of law that any loss caused by the presence of fungus, mold, or mildew *is* an excluded event under the Policy.  This means that "[e]ven if a covered loss may have caused the mold, losses like testing for mold and removing molded baseboards are excluded because they would not have been incurred but for the presence of mold."  See Torabi v. State Farm Fire & Cas. Co., 514 F. Supp. 3d 1064, 1068 (W.D. Ark. Jan. 21, 2021) (interpreting identical language from a State Farm insurance policy).

To be clear, the fungus exclusion does not mean—as State Farm seems to argue—that the presence of mold or mildew automatically forecloses all possible damages for Day. It just means he cannot recover any losses that occurred because of the presence of mold or mildew. See Blaine Const. Corp., 171 F.3d at 349; see also Carpenter v. State Farm Ins. Co., 2009 WL 4160809, at *3 (E.D. La. Nov. 23, 2009). If Day can prove State Farm is liable for breach of contract, then he can still recover damages caused by something other than fungus. That too will be a factual question for the jury to resolve at trial if appropriate.

B.  TCPA Claim

State Farm argues that Day's TCPA "cause of action [is] improper and untenable as a matter of law" because "Tenn. Code Ann. § 56-8-113 is the exclusive remedy for issues regarding insurance claims in Tennessee." (Doc. No. 29 at 8). That section of the Unfair Trade Practices and Unfair Claims Settlement Act of 2009 makes clear that a policy holder cannot assert a *TCPA* claim against an insurer based on an "unfair or deceptive practice in connection with [] a contract of insurance." Tenn. Code Ann. § 56-8-113. Indeed, this Court previously recognized that § 56-8-113 "eliminated the availability of treble damages under the TCPA in a breach-of-insurance-contract action arising after April 29, 2011." McKinnie v. State Farm Fire & Cas. Co., 298 F. Supp. 3d 1138, 1151 (M.D. Tenn. 2018) (quoting Carroll v. Nationwide Prop. & Cas. Co., 2015 WL 3607654, at *3 (W.D. Tenn. June 8, 2015)).

In response to State Farm's motion, Day concedes that he "is not entitled to damages under the" TCPA because of § 56-8-113. (Doc. No. 35 at 16). But he claims "the inquiry should not end there" because § 56-8-113 does not prevent him from seeking *non-statutory* common law penalties. (Id. at 17). The problem with this argument is that the Complaint only alleges that "State Farm violated certain provisions of the [TCPA], Tenn. Code Ann. Sec. 47-18-101, *et. seq.*, specifically, but not exclusively, Tenn. Code Ann. Sec. 47-18-104(b)(12) and Tenn. Code Ann. Sec. 47-18-

104(b)(13)." (Doc. No. 1 ¶ 21). It says nothing about "damages under the common law." (Doc. No. 35 at 17). The Court will not permit Day to proceed to trial on some unknown common law cause of action that is not explicitly alleged in the Complaint.

Accordingly, the Court will grant State Farm's motion for summary judgment on Day's TCPA claim.

## IV. CONCLUSION

For these reasons, Day's Motion for Partial Summary Judgment (Doc. No. 25) is **DENIED**, and State Farm's Motion for Summary Judgment (Doc. No. 28) is **GRANTED IN PART** and **DENIED IN PART**. Day's TCPA claim is **DISMISSED**, and his only remaining cause of action in this case is his breach of contract claim against State Farm. This case remains set for a jury trial on December 2, 2025, and all remaining pretrial deadlines remain in place. (See Doc. No. 16).

The Court further orders that all parties **SHALL** engage in another formal attempt to resolve the case. On or before **October 24, 2025**, the parties shall confer and file a joint notice setting forth: (1) their agreed mediator; and (2) the date or dates of the mediation. If the parties cannot agree on a mediator within the time limit allotted, the Court will select a mediator for them. And if the parties' mediation ultimately proves unsuccessful, the parties shall immediately file a joint status update to that effect. See L.R. 16.05(b) (requiring mediator to file a report within two business days following the mediation).

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE